IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Jonathan David McCoy, <br><br> Plaintiff <br><br> v. <br><br> City of Columbia, City of Columbia Police Department, John K. Passmore, James Heywood, and Amanda H. Long, all in their individual and official capacities, <br><br> Defendants. | CIVIL ACTION №:  3:10-132-JFA-JRM <br><br><br> **VERIFIED COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

## **PARTIES**

1.  Plaintiff Jonathan David McCoy ("McCoy") is a citizen and resident of Horry County, South Carolina. McCoy is and at all relevant times herein, a member in good standing of the South Carolina Bar (# 77540).

2.  Defendant City of Columbia is a municipality and political body corporate and politic operating within the County of Richland, the State of South Carolina and duly established by the laws of the State of South Carolina.

3.  Defendant City of Columbia Police Department is an agency and/or subdivision of the City of Columbia.

4.  Defendant John K. Passmore, upon information and belief, is a citizen and resident of Richland County, South Carolina. He is named individually and in his official capacity and at all times relevant to this action, he was employed as a law enforcement officer with the City of Columbia Police Department acting under color of state law and within the

1

course and scope of his duties as an employee of the City of Columbia Police Department and the City of Columbia.

5. Defendant James Heywood, upon information and belief, is a citizen and resident of Richland County, South Carolina.  He is named individually and in his official capacity and at all times relevant to this action, he was employed as a law enforcement officer with the City of Columbia Police Department acting under color of state law and within the course and scope of his duties as an employee of the City of Columbia Police Department and the City of Columbia.

6. Defendant Amanda H. Long, upon information and belief, is a citizen and resident of Richland County, South Carolina.  She is named individually and in her official capacity and at all times relevant to this action, she was employed as a law enforcement officer with the City of Columbia Police Department acting under color of state law and within the course and scope of her duties as an employee of the City of Columbia Police Department and the City of Columbia.

## JURISDICTION AND VENUE

7. This action arises under 42 U.S.C. § 1983, the Declaratory Judgment Act, 28 U.S.C.A. § 2201 et seq., the First and Fourteenth Amendments to the United States Constitution and the Constitution of the State of South Carolina.

8. This Court has subject matter jurisdiction to adjudicate the allegations set forth herein pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9. Venue and Jurisdiction are proper in this Court because a substantial part of the events or omissions giving rise to these allegations occurred in the District of South Carolina, Columbia Division and one or more of the defendants reside in Richland County, South Carolina.

## **FACTS**

10.  On or about the evening of October 16, 2009, McCoy, and his friend who was also a guest of McCoy that night, Allen Keith McAlister Jr. ("McAlister"), were socializing with a wedding party at an establishment known as Red Hot Tomatoes on Harden Street located in the Five Points District of Columbia, South Carolina.

11.  Upon information and belief, McAlister disputed several charges placed on his food and beverage tab at Red Hot Tomatoes.  Upon request to leave, McAlister immediately exited through the front door of Red Hot Tomatoes and never reentered.

12.  Shortly thereafter, McCoy walked outside of Red Hot Tomatoes and witnessed McAlister being violently shoved against a wall and thrown to the ground on a public sidewalk by Defendants Passmore, Heywood, and Long.

13.  McAlister was arrested for "Refusal to Leave" Red Hot Tomatoes, pursuant to S.C. Code Ann. § 16-11-620[1], and Resisting Arrest pursuant to City of Columbia Municipal Ordinance § 10-34(a).  Upon information and belief, Defendants charged McAlister for Resisting Arrest based on a policy and common practice of the City of Columbia Police Department to also arrest individuals for Resisting Arrest for "liability purposes" in matters where their officers wrongfully apply excessive force.

14.  This arrest occurred on a public sidewalk outside of Sharky's Restaurant, a separate and distinct business establishment from Red Hot Tomatoes, and approximately seventy (70) feet away from the front entrance to Red Hot Tomatoes.

---

[1]S.C. Code Ann. § 16-11-620 provides:
>Any person who, without legal cause or good excuse, enters into the dwelling house, place of business, or on the premises of another person after having been warned not to do so or any person who, having entered into the dwelling house, place of business, or on the premises of another person without having been warned fails and refuses, without good cause or good excuse, to leave immediately upon being ordered or requested to do so by the person in possession or his agent or representative shall, on conviction, be fined not more than two hundred dollars or be imprisoned for not more than thirty days.

15. McCoy approached the Officers while McAlister was handcuffed and simply asked if McAlister was under arrest. McCoy intended to inquire about the nature of the arrest, the location of Mr. McAlister's booking, and to advise McAlister of his right to remain silent.

16. When McCoy approached, one or more of the Officers shoved McCoy and yelled at him to "Shut up! Keep walking! It's none of your business," or words to that effect.

17. McCoy responded "I just want to know what happened and where you are taking him so I can appear at his bond hearing. I am an attorney and he is supposed to stay at my house tonight. I want to know where you are taking him and he needs to be advised of his right to remain silent," or words to that effect.

18. Defendants Passmore and Long grabbed McCoy by his right shoulder shoved him and pointed their finger in his face and yelled "I told you to shut up! You ain't a lawyer. But now you will know exactly where he is going cuz' you are going with him too, son," or words to that effect. At no time did McCoy commit any act rising to the level of fighting words.

19. Defendants Passmore and Long forcibly handcuffed McCoy and he was escorted to one or more of the Officers' patrol vehicles.

20. At all times referenced above, the arrests of McCoy and McAlister were recorded through outdoor video surveillance cameras maintained by Red Hot Tomatoes and Sharky's Restaurant. A true and accurate copy of the relevant portion of the video obtained by Red Hot Tomatoes and Sharky's Restaurant is attached hereto and incorporated by reference as <u>Exhibit A</u>.

21. While McCoy was subject to search and interrogation standing near the front of the patrol vehicle, McCoy stated, or uttered word to this effect, "Help me understand. What am I being arrested for?" Defendant Passmore responded "For that right there— asking questions. It's none of your business." McCoy stated, "Am I arrested for anything else?" Defendant

Passmore responded, "No, and asking questions interfered with us."  McCoy stated, "I was being polite and simply asking those questions.  So it's a crime to ask questions about his arrest?"  Defendant Passmore stated, "Yes, and you won't quit asking questions.  You should have minded your own business kid."  During this exchange, Defendants never claimed McCoy wrongfully touched them or threaten them in any manner.

22.     Additionally, Defendant Passmore stated to McCoy at or near the patrol vehicle: "I arrest kids down here all the time that tell me that they are lawyers; that's not the first time I have heard that story," and "since you claim to be a lawyer, you should know about your right to remain silent," and "maybe you can find some clients in jail," or words to that effect, to which the Officers snickered to each other.  Defendant Passmore stated to the effect "I'm gonna put on the report that you lied to me about being a lawyer.  Are you sure you want me to put that down or do you want to explain that to the judge?"

23.     Defendant Long placed McCoy in the back seat of Officer Heywood's patrol vehicle and McCoy stated, "are you really putting me in this cop car and actually taking me to jail for asking questions?"  Defendant Long replied, "Yes— and that's where you go when you get arrested."

24.     Upon information and belief, some or all of the statements, as referenced in paragraphs 21-23 above, should have been recorded by the dashboard camera video equipment located inside the Defendants' patrol vehicle pursuant to policies and procedures of the City of Columbia Police Department.  However, Defendants now claim that no video recording of this incident exists.  A true and accurate copy of a letter from Defendant City of Columbia dated December 4, 2009 is attached hereto as <u>Exhibit B</u>.

25.    Upon information and belief, McCoy will show Defendants either intentionally destroyed this vehicle dashboard camera evidence or they violated their own policies and procedures for failing to operate and maintain their cameras in discharging their duties.

26.    McCoy was charged and arrested with violating City of Columbia Municipal Ordinance Section 10-34(b) for "interfering with a police officer" and he was issued a State of South Carolina Uniform Traffic Ticket, number 13589EW.  A copy of this arrest ticket is attached hereto and incorporated by reference as Exhibit C.

27.    McCoy and McAlister were transported to the Alvin Glenn Detention Center in Richland County, South Carolina for booking and confinement.

28.    While McCoy and McAlister remained in confinement, Defendants failed and refused to properly and timely deliver required arrest information and booking documentation to the Alvin Glenn Detention Center.  As a result, McCoy and McAlister were transported to and assigned a cell in the general population ward of the Alvin Glenn Detention Center with violent and hardened criminals.  While being escorted to the ward, McCoy asked the officer if there was a "non-violent unit?"  The escorting officer said "no, everybody is violent where you are going; don't let them see you scared."

29.    Due to the willful failure of the Defendants to turn in the paperwork, McCoy and McAlister were prevented from appearing at any of the two scheduled bond hearings set for October 17, 2009.

30.    While confined after the scheduled bond hearings, McCoy witnessed another cellmate violently commit suicide by hanging himself with rope from the sink and towel holder of the cell.  McCoy was unable to prevent this cellmate from dying.

31.     Eventually, McAlister was allowed to place a collect call from Alvin Glenn Detention Center to his parents to advise that he and McCoy had been arrested and were not afforded a bond hearing.

32.     On the afternoon of October 17, 2009, while McCoy and McAlister remained confined, McAlister's father met or spoke with individuals of the City of Columbia Police Department, including Defendant Passmore, to discuss the arrest. Defendant Passmore claimed McAlister was arrested for reentering the front door to Red Hot Tomatoes. Defendant Passmore told McAlister's father "I was right there and your son had three or four chances to leave and would not. I had no choice but to arrest him," or words to that effect. At no time did Defendant Passmore state McCoy threatened the Officers in any manner, only that McCoy was arrested for asking questions and claiming he was a lawyer.

33.     Upon information and belief, Municipal Judge Turner for the City of Columbia was contacted and advised that McCoy and McAlister were not afforded a bond hearing due to Defendants' failure to timely and properly deliver arrest documentation to Alvin Glenn Detention Center.

34.     On or after 7:00 p.m. of October 17, 2009, Municipal Judge Turner appeared at the Alvin Glenn Detention Center to conduct an unscheduled emergency bond hearing for McCoy and McAlister.

35.     McCoy and McAlister were released on personal recognizance bonds. During the hearing, Municipal Judge Turner stated, "Mr. McCoy, I do not have a schedule fee for interference or even have it in my code book, so I'll just set your bond at $450.00," or words to that effect.

36. On or about October 21, 2009, at McCoy's initial appearance, McCoy thanked Judge Turner for coming down to the jail on a Saturday night and she stated, "I'm so sorry. You would have never had to be in jail that long or had to see someone commit suicide if the Officers would have turned in the paperwork on time," and that "I'm sure we will all hear more about this," or words to that effect.

37. In a willful attempt to concoct probable cause for and pretextually justify these wrongful arrests, Defendants Passmore, Heywood, and Long prepared and submitted a false and materially inaccurate Incident Report. A true and accurate copy of the Incident Report prepared by Defendants is attached hereto as Exhibit D.

38. In the Incident Report, Defendants Passmore, Heywood, and Long falsely and maliciously wrote that McAlister "came back [to Red Hot Tomatoes]….at that time [McAlister] was advised he was under arrest for Refusal to Leave" and "when [Officers] attempted to place [McAlister] into handcuffs he snatched his arms away and started pushing the Officers away from him. Two other Officers had to help subdue [McAlister] to the ground to gain control of him." Furthermore, Officers falsely claimed McCoy "grabbed an Officer by the arm" and got in an "[Officer's] face."

39. Based on clear video evidence, as referenced in Exhibit A, these statements are patently false and made with a reckless indifference for the truth. McAlister did not reenter Red Hot Tomatoes. Instead, McAlister was standing approximately seventy (70) feet away on a public sidewalk in front of Sharky's Restaurant. All three individual Defendants approached McAlister at the same time, and without advising that he was under arrest, they forcibly grabbed McAlister and slammed his face against the wall of Sharky's Restaurant, and then tripped him to

8

the concrete sidewalk. Furthermore, McCoy never "grabbed an Officer by the arm" or got into an "[Officer's] face." McCoy was simply asking questions in a non-threatening manner.

40. Defendants have failed and refused to dismiss the charge against McCoy. A true and accurate copy of a letter from McCoy's counsel to Defendants is attached hereto as <u>Exhibit E</u>.

41. Upon information and belief, the charge against McCoy have not been dismissed due to the City of Columbia's "NO-DROP" policy, although Defendants knew or should have known this arrest lacks probable cause and violated constitutionally-afforded rights.

42. As a result of this arrest and the acts and omissions of Defendants, McCoy has suffered actual damages, including but not limited to, costs associated with defending against this criminal charge, stigmatism of reputation and character, loss of enjoyment of life, wrongful imprisonment and confinement, as well as suffering extreme mental and emotional distress, including the diagnosis and treatment for Post-Traumatic Stress Disorder.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Unconstitutionality of City of Columbia Municipal Ordinance § 10-34(b)**

43. Plaintiff incorporates by reference the allegations of Paragraphs 1 through 42 as fully as if repeated herein.

44. "The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers" because "[t]he Constitution does not allow such speech to be made a crime. The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principle characteristics by which we distinguish a free nation from a police state." <u>City of Houston, Texas v. Hill</u>, 482 U.S. 451, 461-63 (1987).

45. "A properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" Id.

46. "Arresting a person solely based on speech that questions or opposes police action violates the First Amendment." Lowe v. Spears, 258 Fed. Appx. 568 (4th Cir. 2007).

47. The Due Process Clause of the Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law…." U.S. Const. Amend. XIV, § 1.

48. The Supreme Court has long held that unclear laws should be found unconstitutional since they deny due process. Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).

49. The Supreme Court has held that a person of ordinary intelligence must be able to reasonably understand what conduct is prohibited. Kolender v. Lawson, 461 U.S. 352, 357 (1983).

50. City of Columbia enacted a municipal ordinance in 1979, codified in the Code of Ordinances of the City of Columbia, South Carolina in Section 10-34(b), creating a misdemeanor criminal offense for "interfering with a police officer" within the City of Columbia.

51. City of Columbia Municipal Ordinance § 10-34(b) provides "It shall be unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties."

52. On or about October 17, 2009, McCoy was arrested and charged with violating City of Columbia Municipal Ordinance § 10-34(b) for conduct and speech that merely questioned or challenged the actions of Defendants Passmore, Heywood, and Long.

53. City of Columbia Municipal Ordinance § 10-34(b) is unconstitutionally broad and vague on its face and as applied to McCoy because it criminalizes a substantial amount of constitutionally protected speech afforded by the First Amendment to the United States Constitution.

54. City of Columbia Municipal Ordinance § 10-34(b) punishes spoken words and is not limited in scope to fighting words, that by their very utterance inflict injury or tend to incite an immediate breach of the peace.

55. City of Columbia Municipal Ordinance § 10-34(b) is not limited or narrowly tailored to physical obstruction of police activity or fighting words, but prohibits and criminalizes speech and conduct that in any manner interrupts an officer and accords the police unconstitutional and unfettered discretion in their enforcement.

56. The words "interfere with" are unconstitutionally vague and overly broad because they pertain to a substantial amount of constitutionally protected speech and persons of ordinary intelligence cannot reasonably understand what types of conduct or "interference" with an officer is prohibited.

57. City of Columbia Municipal Ordinance § 10-34(b) is unconstitutional and void because a reasonable person is incapable of knowing what conduct or words constitute the undefined, ambiguous, and vague criminal offense of "interfere with…a police officer."

58. City of Columbia Municipal Ordinance § 10-34(b) is unconstitutional and void because it provides Defendants' unlawful discretion to arrest and prosecute those whom they feel have made inappropriate remarks which invites gross abuses of discretion and impose unfair penalties and burdens upon the citizenry. Town of Honea Path v. Flynn, 255 S.C. 32, 39-40, 176 S.E.2d 564, 567 (1970).

59. Defendants knew or should have known that City of Columbia Municipal Ordinance § 10-34(b) is unconstitutional and void because substantially similar and identical "interference" ordinances have been deemed unconstitutional pursuant to the United States Supreme Court in <u>City of Houston, Texas v. Hill</u>, 482 U.S. 451 (1987) and the South Carolina Supreme Court <u>Town of Honea Path v. Flynn</u>, 255 S.C. 32, 39-40, 176 S.E.2d 564, 567 (1970).

60. Upon information and belief, Defendants routinely, through their custom, usage, or practice, arrest individuals in or around the City of Columbia in violation of City of Columbia Municipal Ordinance § 10-34(b) for conduct based on speech or actions that question or oppose police action, all in violation of constitutionally-afforded liberties.

61. Upon information and belief, Defendants are granted unfettered discretion in determining what conduct or inappropriate remarks are deemed criminal to warrant a charge of "interference" and at all times impose unfair penalties and unconstitutional burdens upon the citizenry.

62. McCoy is informed and believes he is entitled to an order declaring City of Columbia Municipal Ordinance § 10-34(b) unconstitutional on its face.

63. McCoy is informed and believes he is entitled to an order declaring City of Columbia Municipal Ordinance § 10-34(b) unconstitutional as applied to him.

64. McCoy is informed and believes he is entitled to an injunction preventing Defendants from prosecuting him for violating an unconstitutional ordinance and preventing any further infringement to his clearly established constitutionally-afforded rights.

65. McCoy is informed and believes he is entitled to recover actual, consequential, and incidental damages, jointly and severally, against Defendants, including reimbursement of attorney's fees and costs in this action.

## SECOND CAUSE OF ACTION
**Declaratory Judgment**
**Unconstitutionality of City of Columbia Municipal Ordinance § 10-34(b)**

66.     Plaintiff incorporates by reference the allegations of Paragraphs 1 through 65 as fully as if repeated herein.

67.     This action is brought pursuant to the provisions of the federal Declaratory Judgment Act, 28 U.S.C.A. § 2201 et seq.

68.     The instant dispute is an "actual controversy," as defined within the law governing the application of the federal Declaratory Judgment Act. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007).

69.     Specifically, the dispute in the case at bar is definite and concrete; touches the legal relations of the parties having adverse legal interests; and is real and substantial involving the protection against further infringement of McCoy's First Amendment and due process rights. Id.

70.     McCoy is informed and believes that he is entitled to an order declaring City of Columbia Municipal Ordance § 10-34(b) unconstitutional on its face, or in the alternative, declaring City of Columbia Municipal Ordinance § 10-34(b) unconstitutional as applied to him.

71.     McCoy is informed and believes he is entitled to injunctive relief preventing Defendants from further prosecution of City of Columbia Municipal Ordinance § 10-34(b) and to prevent any further infringement to his clearly established constitutionally-afforded rights.

WHEREFORE, McCoy prays this Honorable Court enter judgment, jointly and severally, as follows:

(a)     Declare City of Columbia Municipal Code Section 10-34(b) unconstitutional on its face;

(b) Declare City of Columbia Municipal Code Section 10-34(b) unconstitutional as applied;

(c) Enjoin Defendants from enforcing City of Columbia Municipal Code Section 10-34(b) against McCoy and any other person;

(d) Enjoin Defendants from prosecuting McCoy for allegedly violating City of Columbia Municipal Code Section 10-34(b);

(e) Enter an Order requiring Defendants expunge this charge and the convictions of other persons charged with violating City of Columbia Municipal Code Section 10-34(b);

(f) Grant McCoy his actual, incidental, and consequential damages from this illegal arrest and false imprisonment;

(g) Grant McCoy his costs in this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and any other applicable authority;

(h) Allow McCoy to amend his complaint to assert additional causes of action seeking recovery of certain damages for these and other constitutional violations and common law offenses and to request a jury trial on these matters; and

(i) Grant McCoy such other relief as this Court deems just and equitable.

Respectfully submitted,

COLLINS & LACY, P.C.


By:   s/   Robert F. Goings
ROBERT F. GOINGS, ESQUIRE
Federal I.D. No. 9838
rgoings@collinsandlacy.com
JOEL W. COLLINS, JR., ESQUIRE
Federal I.D. No. 224
1330 Lady Street, Sixth Floor (29201)
Post Office Box 12487
Columbia, South Carolina 29211
(803) 256-2660
(803) 771-4484 (f)

Columbia, South Carolina

January 19, 2010

## VERIFICATION

PERSONALLY APPEARED BEFORE ME, Jonathan David McCoy, who, upon being duly sworn, deposes and states as follows:

I am the named Plaintiff listed in the attached Summons and Complaint. I have read the allegations contained in the attached Summons and Complaint, and said allegations are true and correct to the best of my information and belief.

This 18th day of January 2010.

_____
Jonathan David McCoy

SWORN to and SUBSCRIBED before me
this 18 day of January, 2010
_____(L.S.)
NOTARY PUBLIC for South Carolina
My Commission Expires: 5-18-10